JAMES A. POLLEY, *Appellee*, v. THE KANSAS CITY OIL COMPANY, *Appellant*.

No. 17,952.

SYLLABUS BY THE COURT.

TRIAL—*Proper Cross-examination of Witness Refused.* Upon the cross-examination of a witness in a trial the examiner has the right to ask questions to test the knowledge of the witness concerning the matters with reference to which he has testified or to elicit evidence favorable to the examiner's side of the case, provided such questions are not otherwise objectionable.

Appeal from Wyandotte court of common pleas. Opinion filed April 12, 1913. Reversed.

*C. A. Bissett,* of Kansas City, Mo., *C. Angevine, J. K. Cubbison,* and *William G. Holt,* all of Kansas City, for the appellant.

*James F. Getty,* of Kansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought by the appellee to recover from the appellant damages for personal injuries received in the fall of a platform upon which he was standing while engaged in painting a building for the appellant.

The petition, in part, was as follows:

"That the platform or scaffold was erected against the side of said building, at the height of about twelve feet, in the following manner: That certain brackets or supports were constructed by fastening two pieces of plank or timber together in the form of a right angle, one arm of said angle being about three feet long, and the other being about four feet long, and then fastening a board on each side of said first two planks or timbers, extending to a point near the outside end of the short arm of said right angle, diagonally down to a point on the long arm of said right angle, and about five or six feet below the point where said arms of said right angle were connected. That the long arms of said brackets were placed in a vertical position against the side of said building, the short arms of said brackets projecting out at right angles from the said building, the said brackets being secured and supported by another piece of timber or plank being first inserted between the two braces and against the point where the short and long arms of said right angle were fastened together. The other end of said plank resting on the ground in such a manner as to brace and hold said brackets against said building.

"That said brackets or braces were not fastened to the sides of said building and were held in place solely by the last mentioned plank resting on the ground. That the said defendant, in disregard of its duty to furnish the plaintiff a reasonably safe place to work, negligently and carelessly omitted to properly place said braces or supports upholding said brackets or to secure the end of said brace timbers upon the ground. That by reason thereof, the said scaffold was weak, defective and wholly unfit for the purpose for which it was used by the defendant, by reason whereof, at the time afore-

18—89 KAN.

said, when the plaintiff, in pursuance of the orders and directions of the said superintendent, went upon said scaffold, the said braces slipped or sank into the ground or loosened in such a manner that the said brackets were permitted to and did fall, permitting said scaffolding to fall to the ground, whereby plaintiff was caused to fall and drop with said scaffold and was injured. That plaintiff was damaged by reason of the injuries received by the fall in the amount of two thousand dollars, for which sum he prays judgment."

The answer of appellant, after a general denial, was, in part, as follows:

"That said injury complained of by the plaintiff in his petition, if any injury there was, was caused by the fault and negligence of the plaintiff himself and not by any act or omission on the part of this defendant.

"For a third and further answer and defense, this defendant says that the injuries of the plaintiff, if any such there were, were the result of the usual and ordinary risks of the business in which the plaintiff was engaged, and that all of the risks and dangers of said employment, together with the risks and dangers of being injured in the manner in which the plaintiff was injured, were open and obvious and were well known to the plantiff, or by the exercise of ordinary care and prudence should have been known to the plaintiff, and said plaintiff assumed such risks and dangers as a part of his employment.

"For a fourth and further defense to the petition filed herein, the defendant says that if the plaintiff was injured at the time and place mentioned in his petition, his injuries were caused by and through the negligence of a fellow servant."

The reply was a general denial.

In accordance with the petition, the appellee tried the case on the theory that it was the duty of the appellant to furnish him a safe place to work, and by reason of the failure to do so he fell and was injured and was entitled to damages. The form and description of the several parts of the platform or scaffold as set forth in the petition is in accord with the evidence, in which there was no conflict in this respect.

On the part of the appellant, the case was tried on the theory that the appellant furnished the appellee and his fellow laborers all necessary material to make the scaffold, which appellants claim was a very simple matter, and that they undertook to and did make their own place to work without any superintendence; that the appellee and his fellow laborers had several days of experience in putting up this and like scaffolds for painting; that the appellee and his fellow laborers were guilty of negligence in putting up the scaffold from which he fell, and that the appellant was not responsible for any damages which may have resulted therefrom.

The scaffold from which the appellee fell was one of several of like pattern, before described, used in painting the buildings. Three or more of the brackets supported planks which were placed on top of the upper arm of the right angle to form a floor upon which the painters stood.

The principal allegation of error on the trial is based upon the rulings of the court in sustaining objections to questions propounded to the appellee as a witness on cross-examination.

A number of similar platforms were used upon this and other buildings which were being painted, and the appellee testified that he had been at this work for some days, had seen the platforms erected and had assisted in lowering the one upon which he worked, as occasion required. He had also testified that he and two fellow workmen were left to erect a platform upon which they were to work on the morning of the accident, and that about the time they began to erect the platform he left the place and went some distance for water to drink.

On cross-examination he was asked the following, and other, questions:

"Q. Now, you stated, I believe, that you had worked on that scaffold, arranged with these brackets and supports for painting eight or ten tanks? A. Yes.

"Q. It was this same scaffold or the same character of scaffold you used in painting tanks that you were using at the time you were hurt? A. Yes, I think they was the same ones.

"Q. During the time you would be painting on the tanks, would the scaffold be lowered from time to time? A. We would take it down and lower it."

The appellee was then asked the following question, to which objection was made as immaterial, and the objection was sustained:

"Q. Just tell how that would be done, to lower it."

Then followed the following questions and answers:

"Q. Were you ever present when they were putting up or taking down any of the scaffolds at any of the tanks or buildings during the eight or ten days that you were there helping to paint tanks and buildings? A. Yes, sir, I was there.

"Q. Did you see the men put up the scaffolds and take them down? A. Yes, sometimes I had.

"Q. Did you help at any times in doing anything toward putting up the scaffolds? A. Well,. I helped lay the boards on them.

"Q. Did you ever help put up any of the supporting 2 by 4's? A. No.

"Q. Did you ever see them put up? A. Yes, I seen them put up.

"Q. Who was that at these various times that erected the scaffolds? A. When we was there on the hill, you mean, painting tanks?

"Q. Yes. A. My father.

"Q. And who else? A. Well, there was, sometimes, Bill Hiller would be up there with us and be another fellow or two up there, sometimes there would be only three of us, sometimes two of us.

"Q. Did you ever help your father in putting the .scaffolds up? A. I helped to lay boards on it.

"Q. Now, at those times, when you helped lay the boards across the brackets, how were the supporting 2 by 4's set? A. Set just like I told you a while ago, as near as I can tell you.

"Q. How is that? A. They were up against, in that there like that (indicating on model), and then leaning down against the ground.

"Q.  What was against the ground?  A.  The 2 by 4.

"Q.  Just resting on the ground, you mean?  A. Yes, there was the end of it sticking down on the ground.

"Q.  Did you see your father or one of the men help erect this scaffold, where you were hurt?  A.  Oh, no, he never helped them at all.

"Q.  Who put that up?  A.  A fellow by the name of Fletcher and Bill Hiller."

The following question was asked and objected to and the objection sustained:

"Q.  Was that set up the same as the rest of them, with the 2 by 4's resting on the ground?"

Other questions were asked as follows:

"Q.  Did you say that you helped take down the scaffolds at times?  A.  Yes, I helped take them down.

"Q.  How many times did you help take this same kind of scaffolding down?  A.  I could n't say.

"Q.  As many as half a dozen times?  A.  No, I don't believe I have.

"Q.  Three or four times?  A.  Well, something like that."

After the appellee had testified that he had gone for water he was asked:

"Q.  Where was the scaffolding at that time, when you started for water?"

The question was objected to as immaterial and not proper cross-examination and the objection was sustained.

He was then asked:

"Q.  How far had you got along putting the scaffold up, when you went for the bucket of water?"

Objected to and the objection sustained.

"Q.  Do you know how the scaffold was put up on the south side?  A.  I don't know.

"Q.  You were there while they were putting it up, were n't you?"

Objected to as argumentative and objection sustained.

It appears from the undisputed evidence that all the material for the scaffold was at hand; that for some time previous the workmen had all been setting up and taking down scaffolds and that it was a very simple operation, viz., to put the brackets against the side of the building, to put in a scantling for a brace to hold it up and a brace to keep it from swerving sideways, and a stake at the foot of the brace to keep it from slipping; that this was as much a part of their work as was the painting; that appellee had repeatedly assisted, or, at least, had been present at the putting up and taking down of similar scaffolds, and that no expert skill or knowledge or superintendence was required; and that they were simply fixing a place to work by an ordinary and well known contrivance.

The appellee testified that he went away for water about the time the other two workmen commenced to remove and put up the scaffold. The appellant, on cross-examination, asked questions to show the appellee's knowledge in regard to putting up the scaffold, whether the work had commenced before he went for the water, and whether it was completed when he returned—in short, to show whether he knew how the scaffold should be put up, and how in fact it had been or was being put up. Objections were made to each of these inquiries and the court sustained the objections. We think they were proper and material questions in determining whether or not he participated in the negligence of the other two, it appearing that one of the braces that rested upon the ground was not staked and was set upon soft ground at the edge of a ditch, and the brackets had not been side-braced.

On the cross-examination of a witness the examiner has the right to ask proper questions tending to show the knowledge of the witness concerning the matters of which he has testified, or to elicit evidence concerning the same matters favorable to his side of the case if the questions are not otherwise objectionable.

We think the court erroneously limited the cross-examination of the appellee as a witness in these respects.

If the plaintiff had nothing to do with the preparation of the scaffold, and had not sufficient knowledge or experience to enable him to judge of its safety, the fellow-servant rule is not a defense. (*Henry v. Boiler Works,* 87 Kan. 571, 125 Pac. 67.)

The judgment is reversed and the case is remanded for a new trial.